A. J. AYERS, et al., v. THE BOARD OF COMMISSIONERS OF TREGO COUNTY, et al.

1. STATUTE, *Valid.* Chapter 70, Laws of 1883, is not unconstitutional or void on account of the discrepancies or irregularities in the description of the title to the bill contained in the legislative journals of 1883. (*In re Hinkle*, 31 Kas. 712; *Weyand v. Stover*, 35 id. 545.)

2. ———— *No Judicial Construction.* Where the statute is plain and unambiguous, there is no room left for a judicial construction so as to change the language employed therein.

*Error from Trego District Court.*

ACTION to restrain the collection of certain taxes. Judgment for the defendants, at the November Term, 1885. The plaintiffs bring the case here.

*E. A. McGrath*, for plaintiffs in error.

*D. C. Nellis*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: Action brought by A. J. Ayers and thirty-five others against the board of county commissioners of Trego county, James Kelley, county treasurer, and George Baker, sheriff, to restrain the collection of certain taxes. Temporary injunction granted. Trial at the November term, 1885, and judgment for defendants. To reverse this judgment, the plaintiffs bring the case to this court.

It is conceded by the plaintiffs and defendants that Gove county was a municipal township, first, of Ellis county, and then by ch. 100, Laws of 1881, it became attached to Trego county for judicial and municipal purposes. It seems to be admitted that the only semblance of legislative authority under which the taxes were levied, is found in § 31, chapter 72, Laws of 1873. The plaintiffs claim that if such power was ever conferred, it was taken away by chapter 70, Laws of 1883, which repealed § 31, chapter 72, Laws of 1873, and was not again conferred until the enactment of chapter 8, Special Session

Laws of 1884. Defendants claim that chapter 70, Laws of 1883, never became a law. They contend that the legislative action which produced that chapter was not in accordance with the rules established by the constitution of the state for making laws. They say that the bill which afterward appeared as chapter 70 of the Laws of 1883 originated in the senate as number 120; that its title on first, second, and third readings was wholly different from that which appears as chapter 70, Laws of 1883; that in the house on its various readings, its title was wholly different from that which it had in the senate at any of its readings, or that with which it was baptized when finally passed; that the governor, when approving the bill, called in his executive clerk, and after labor decided to give "it a new name," and with such new name sent it back to the senate, which was the last act done with reference to the bill. Further, the defendants contend that "31" was put in § 7, chapter 70, Laws of 1883, by inadvertence, when the figure 9 was really intended therefor; that "31" is no part of § 7, and does not give the plaintiffs any cause to say that they ought not to have been taxed in 1884.

An examination of the senate journal of the year 1883 shows that senate bill number 120 was read in the senate the third time on February 15, 1883, and, being subject to amendment and debate, Senator Motz moved to amend by striking therefrom all after the enacting clause, and introducing a new bill. The question being on the motion to amend, as made by Senator Motz, and a vote being had, the motion prevailed. Senator Sluss moved to amend by striking out "Sequoyah" wherever it appeared in the bill, and inserting in lieu thereof "Finney," so as to change the name of Sequoyah to that of Finney, which motion prevailed. The bill then having been read the third time, the question was, Shall the bill pass? The roll was called, with the following result: Yeas, 32; nays, 3. A constitutional majority having voted in favor of the passage of the bill, the bill was declared passed, and the title was, on motion of Senator Motz, amended to

16—37 KAS.

correspond with the provisions of the bill, and as amended agreed to.   The bill is the same as that published in the Laws of 1883 as chapter 70, and the title agreed to was the same as now appears in the published laws of 1883. (Senate Journal, 1883, 449–451.)

The house journal shows that on February 19th, 1883, senate bill number 120 was passed, a constitutional majority having voted in favor of the same, and the title being again read, was agreed to. (House Journal, 1883, 642.)   We cannot say from the house journal that there was any attempt made to describe the title to the bill with exact precision, but as the title to the bill was all right when it passed the senate, and as the journal shows that the title to the bill was the last thing agreed to in the house, and as such title is not literally described in the house journal, and as the title appears in proper form in the enrolled statute, we must assume, notwithstanding the irregularities of the title as set forth in the house journal, that the bill was passed regularly and legally, and that the title, now appearing in the enrolled statute, was agreed to regularly and legally. ( *Weyand v. Stover*, 35 Kas. 545; *The State v. Francis*, 26 id. 731.)

"If there is any room to doubt as to what the journals of the legislature show, if they are merely silent or ambiguous, or if it is possible to explain them upon the hypothesis that the enrolled statute is correct and valid, then it is the duty of the courts to hold that the enrolled statute is valid." ( *The State v. Francis*, supra.)

Regarding the contention that " 31," in § 7, chapter 70, Laws of 1883, should read " 9," we need only reply, that we have not the right to change the statute where it is clear and free from ambiguity, by any judicial interpretation.   We have no authority to interpolate " 9 " in the statute in the place of " 31" when " 9" does not appear therein.   As the statute is plain and unambiguous, there is no room left for construction. ( *In re Hinkle*, 31 Kas. 712.)   The repeal of § " 31," chapter 72, Laws of 1873, by the legislature of 1883, was the result, perhaps, of hasty legislation.   At its special session the legislature at-

tempted to repair the wrong by reënacting substantially the provisions of that section.    After its repeal and prior to its reënactment said § "31" conferred no power to levy the taxes complained of.    The repealing act was in force March 1, 1884. All municipal townships made by annexation of unorganized counties were then wholly wiped out. (*In re Hinkle,* supra.) The property of Gove county at that time was not liable to taxation for county purposes by Trego county.

The judgment of the district court will be reversed, and the cause will be remanded for further proceedings in accordance with the views herein expressed.

All the Justices concurring.