$7\ell - 73$

---

DAVID M. BROWN, Guardian of FRANK A., BURR J., and LODENA COMBS, v. IOWA LEGION OF HONOR, ELIZA J., JOHN C., ANNA MABEL COMBS, and EMMA SCHENCK, Appellant.

| 107 | 439 |
| 110 | 676 |
| 107 | 439 |
| 114 | 40 |
| 107 | 439 |
| c133 | 721 |

Bastards: RECOGNITION. A letter by a father of illegitimate children to their mother, with whom he was living, requesting her to "kiss our boys for me," is a sufficient recognition in writing within Code, section 3385, to make them his legal children.

Insurance: PAYMENTS TO "LEGAL HEIRS." An insurer is bound to pay to insured's illegitimate children their share under a certificate payable to "legal heirs," where insured had made them his legal heirs, under Code, section 3385, by recognizing them in writing, though he did not inform insurer of their existence, and

insurer paid the amount of the policy to the legitimate children after having used diligence to find the legal heirs.

JOINT INDEBTEDNESS. The sum due to "legal heirs" on a certificate of life insurance is not a joint indebtedness, in the sense that payments to part of the heirs will operate as a discharge as to all, in view of Code, section 2923, providing that a conveyance to two or more persons creates a tenancy in common, unless a contrary intention is expressed.

RULE APPLIED. Payment by a benevolent society to part of the heirs of a deceased member of the indemnity provided by its certificates reciting that he was entitled to all the rights and privileges of membership in the order and to participate in its beneficiary fund to a specified amount, which would, at his death, be paid to his legal heirs, does not discharge the obligation to the other heirs.

**Change of Venue:** MOTION. Defendants who are non-residents of the county must move to dismiss the action, as required by Code, section 3502, to entitle them to a dismissal, after there had been a dismissal as to the resident defendants, though the non-residents alleged in their answer that the action was brought in the wrong county, where the issue raised by such allegation had been litigated by the denial of their motion for a change of venue.

MOTION. The fact that the court takes the case under advisement does not relieve defendant from moving to have the action dismissed as to him where judgment was entered dismissing the petition as against a co-defendant, under Code, section 3502, since such motion could only have been properly presented upon the final determination of the liability of such co-defendant.

SAME. A dismissal of an action against one defendant on the ground that judgment was entered dismissing the petition as against a co-defendant, under Code, section 3502, is only authorized upon motion.

**Pleading:** WAIVER. A defendant can not object that plaintiff waived his right to recover from defendant by making other persons co-defendants, under an allegation claiming the sum in controversy paid by defendant to them, where such waiver was not pleaded.

PRAYER. A defendant not praying for an order requiring plaintiff to first attempt to collect of a co-defendant primarily liable, and subrogating defendant to plaintiff's rights if he fails to do so, is not entitled to the order.

*Appeal from Linn District Court.*—HON. W. P. WOLF, Judge.

MONDAY, JANUARY 30, 1899.

RICHARD B. COMBS died on a farm near Wichita, Kan., April 16, 1889, leaving a family composed of his wife, Eliza J. Combs, and children, John C., Anna Mabel and Emma Combs, living at Burlington, Iowa. He held two policies of life insurance, issued by the Iowa Legion of Honor, each providing for the payment of two thousand dollars to his "legal heirs." Upon proof by affidavit of his death, and that the above children were his heirs, payment in full was made to them. The plaintiff alleged in his petition, making the Iowa Legion of Honor alone defendant, that Frank A., Burr J. and Lodena Combs were children and the legal heirs of the deceased, and as such entitled to one-third of the amount of the policies. To this petition the defendant's demurrer because of defect of parties, in that the other beneficiaries were not brought into court, was sustained. Thereupon an amendment and substituted petition was filed, making the legitimate children of Combs parties defendant, and asking judgment against all defendants for one-half of the amount of the policies, with interest. These last defendants moved to strike because of misjoinder of causes of action, and, if this were denied, to transfer to the county of their residence. This was overruled, and the defendants answered, denying that the wards of plaintiff were legal heirs of the deceased, averring the collection of assessments for the payment of the loss, and payment to the legitimate children of Combs, and the concealment by him that he had any illegitimate children, and the exercise of diligence in discovering his legal heirs. Thereupon the cause was transferred to the equity side of the calendar, on motion of the association; and, upon hearing, decree was entered in favor of the Iowa Legion of Honor, and against the other defendants, who appeal. The plaintiff also appealed.— *Modified* and *Affirmed.*

*John M. Redmond, U. C. Blake* and *John A. Reed* for David M. Brown, guardian.

*J. D. Nichols* and *C. Nichols* for appellants J. C. Combs, Anna Mabel Combs and Emma Schenck, and the Iowa Legion of Honor.

Ladd, J.—The three defendants, other than the Iowa Legion of Honor, are the legitimate children of R. B. Combs, deceased, and to these the entire indemnity of four thousand dollars was paid. The plaintiff is the guardian of Frank A., Burr J., and Lodena Combs, and bases his right of recovery on the claim that they are the illegitimate children of the deceased, and were recognized by him as such. Each of the two certificates provided that Combs was "entitled to all the rights and privileges of membership in the Iowa Legion of Honor, and to participate in the beneficiary fund of the order, to the amount of two thousand ($2,000) dollars, which shall, at his death, be paid to his legal heirs."

I.    These certificates must be regarded as written contracts which fix the rights of all parties. *Bolton v. Bolton,* 73 Me. 299 ; *Com v. Wetherbee,* 105 Mass. 149 ; *Supreme Lodge v. Nairn,* 60 Mich. 44 (26 N. W. Rep. 826) ; *Brace v. Chartrand,* 16 Colo. Sup. 19 (12 L. R. A. 209, 26 Pac. Rep. 152). The promise to pay is absolute, and, upon the death of the assured, his "legal heirs" acquired a vested interest in the benefits for which the insured had contracted. *Schunck v. Gegenseitiger Witten & Waisen Fund,* 44 Wis. 369 ; *Association v. Montgomery,* 70 Mich. 587 (38 N. W. Rep. 588) ; *Thomas v. Leake,* 67 Tex. 469 (3 S. W. Rep. 703) ; *Brace v. Chartrand, supra.* See *Carpenter v. Knapp,* 101 Iowa, 712 ; *Schoep v. Insurance Co.* 104 Iowa, 358 ; *McGuire v. Brown,* 41 Iowa, 650. This is by way of analogy with the vesting of estates under wills. A life insurance policy is of like nature, and, in so far as may be, should be treated like a testament. By section 3385 of the Code, illegitimate children, when recognzied in writing, or generally and notoriously, by the father, become his legal heirs ; and the wards of the plaintiff, if children of the deceased, and so recognized, are included within the designa-

tion of the certificates. *McGuire v. Brown,* 41 Iowa, 650; *Milburn v. Milburn,* 60 Iowa, 412; *Blair v. Howell,* 68 Iowa, 619; *Crane v. Crane,* 31 Iowa, 296; 3 Am. & Eng. Enc. Law (2d Ed.) 971. The association undertook to pay the indemnity to the "legal heirs," and was not relieved from so doing by diligence in making inquiry, or because of the father's failure to disclose the number and relationship of his progeny. Nor was he called upon to explain who his "legal heirs" were, and surely he cannot be accused of the fraudulent concealment of that which he was not bound to disclose.

II. The payment to part of the heirs did not discharge the obligation to the others. The amount due on the certificate was not a joint indebtedness, in the sense that payment to part of the heirs might operate as a discharge as to all. The portion belonging to each became accurately fixed and ascertained by the law of descent, upon the death of the insured. Unless the intention is expressed to the contrary, a conveyance to two or more persons creates a tenancy in common. Code, section 2923. What might be a joint tenancy at common law becomes a tenancy in common under the provisions of our statute. For this reason *Farr v. Grand Lodge of A. O. U. W.* 83 Wis. 446 (53 N. W. Rep. 738), is not in point, as the certificates do not indicate an intention that the "legal heirs" shall be joint tenants.

III. The Iowa Legion of Honor asserts that by making the other defendants parties, and claiming a part of the money by it paid to them, the plaintiff waived his right to recover from it. A sufficient answer to the contention is that such a waiver was not pleaded, and for this reason is not an issue in the case.

IV. The legitimate children insist that, as judgment was entered dismissing the petition against the Iowa Legion of Honor, they were entitled, under section 3502 of the Code, to have the action dismissed as to them. A sufficient answer to this contention is that they did not apply for such relief. Such a dismissal is only authorized upon motion. Nor were they relieved from so doing by the aver-

ment in their answer that the action had been brought in the wrong county. That issue had been litigated by the ruling on the motion for change of venue, and could not be again raised. *Kelley v. Cosgrove,* 83 Iowa, 229. Nor were they relieved from so doing by reason of the court taking the case under advisement. The motion might only have been properly presented upon the final determination of the liability of the Iowa Legion of Honor. Besides, as we have seen, that association ought not to have been discharged under the finding of the court that the appellees were the children of Combs, and had been so recognized. The case was tried by the equitable method, and must be heard *de novo* here. Are the wards of the plaintiff the children of the deceased? During the two years prior to his death, Mrs. Botts lived in what she supposed to be the family of Combs, at Wichita, Kansas. It was composed of Miss A. C. Bunn, whom he introduced as Mrs. A. C. Combs, and treated as his wife, and these children, who were hers, and treated by him as his own. He maintained the children and their mother as though his own family, and referred to them as his children. Her testimony is confirmed by that of Casey, who knew the mother, their way of living, and heard Combs refer to himself, in speaking to the children, as "papa," and on one occasion heard him say the boys belonged to him. The children went by the name of Combs. It may be said, in explanation of the possibility of the anomalous life Combs appears to have led, that he was a traveling man, dealing in paints used on the roofs of buildings, and was away from his family living in Burlington most of the time. For several years before his death he seems to have been in Wichita and vicinity,—at least, to have made his headquarters there. Several witnesses, who were personal acquaintances of the deceased, living in Wichita, and somewhat intimate with him, testified that they knew nothing of Miss Bunn, Mrs. A. C. Combs, or these children. They were, however, acquaintances of his family, to whom he would not be likely to disclose his relations with

this woman, and their evidence throws little light upon Comb's relationship with her or her offspring. Wichita then had about thirty thousand inhabitants, and Miss Bunn and children might well have been there without their knowledge. Without reviewing the evidence and circumstances in detail, it will be sufficient to say that we are satisfied with the finding of the district court. The general moral character of Mrs. Botts and Casey is attacked by two witnesses who testified orally. The particular vice charged is not necessarily inconsistent with veracity, and in view of the fact, that the trial occurred so distant from their homes that this could not well be met, and as their evidence is not contradicted in any way, we are inclined to think them entitled to credit.

V.    That Combs did not recognize these children generally and notoriously cannot be questioned. His family and intimate friends did not know of their existence. Did he do so in writing? We need only set out extracts from letters shown to have been written by him to Miss Bunn, or Mrs. A. C. Combs, as she was called. In one, written shortly before his death, after explaining his condition he wrote: "Can't sit up in bed but a little bit at a time, so cannot write much. Kiss our baby for me. Don't feel worried, for the doctor says he will pull me through all right. Love to all. C." It should be said that Lodena was then less than a year old.

Again: "October 9, 1889. My Darling: I am well, but worried a little. * * * Pay one month's rent, and I will pay balance when I come. Hope you are well. Kiss our boys for me. For your back, rub a little of the ointment on it, and take a tablespoonful of niter in one-half glass of water night and morning. Good-by, my love. I will soon be with you soon. C." Another letter of affection to Miss Bunn, written by deceased, was introduced, but does not relate to these children. He indorsed an insurance policy of the A. O. U. W. in 1884: "I bequeath this $2,000 to Mrs. A. C. Combs for her use,—herself and boys. R. B. Combs." It appears that in an action on this policy, .

to which appellants were parties, Miss Bunn, who died shortly after Combs, testified that she had lived with him over twenty years. To the evidence of this there was no exception. It may be added that that action was compromised by the payment of the one-seventh of the indemnity to the widow, and one-seventh to each of the children. He executed to her a note of one thousand five hundred dollars, to be void if she died before he did, and recovery was had on this in Kansas against his estate. In the light of the circumstances shown, these letters clearly recognize the boys and the baby as his own. True, he might have so written of other children. But these letters were written to the mother with whom he was living and cohabiting, and very evidently referred to the children belonging to both. This is the only natural inference to be drawn. In view of their manner of living, they point out the very children mentioned as "our baby" and "our boys." The evidence is not so conclusive as that considered in *Crane v. Crane,* 31 Iowa, 303, but clearly brings the case within the terms of the statute.

The association suggests that the plaintiff be required first to collect from the other defendants, and, in event of failure to do so, it be subrogated to his rights therein. Such relief is not included in its prayer, and for this reason must be denied. On plaintiff's appeal, reversed, and otherwise affirmed.—MODIFIED and AFFIRMED.