FRANK P. THOMAS V. ESTATE OF JOHN D. THOMAS, DECEASED.

FILED MAY 8, 1902.   No. 11,082.

Commissioner's opinion, Department No. 1.

1. **Placing Law Case on Equity Docket Over Plaintiff's Objection:** WAIVER. Error in placing a law case on an equity docket over plaintiff's objection is waived, if at the trial plaintiff expressly declines hearing before a jury.

2. **Harmless Error.** Error in holding witness incompetent and refusing all her testimony is immaterial, if the testimony offered, together with the proofs received, shows no right of action.

3. **Illegitimate Child:** PRESCRIBED EVIDENCE OF PATERNITY. Section 31, chapter 23, Compiled Statutes, in making an illegitimate child an heir of the person who "shall, in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child," only provided for the prescribed evidence of paternity.

4. **What Need Not Appear.** No intention to make the child an heir, and no distinct statement that it is an illegitimate child, need appear in the writing.

5. **Marital Confidence:** MARRIAGE VOID AB INITIO. A woman whose marriage with decedent was annulled during his lifetime because of the existence of a former husband at the time of the marriage is a competent witness against his estate as to facts learned otherwise than by communications from deceased during the existence of marital relations.

ERROR from the district court for Douglas county. Tried below before FAWCETT, J.  *Reversed.*

*John D. Ware,* for plaintiff in error.

*George A. Magney, contra.*

HASTINGS, C.

The dispute in this case relates to the construction of section 31, chapter 23, Compiled Statutes, 1901. The specific question seems to be whether the acknowledgment in writing, signed in the presence of a competent witness, required of the father of an illegitimate child in order to constitute the latter an heir, is simply a provision for written evidence of paternity, or whether it is a requirement of a written instrument signifying an intention of the father to change the status of the child. Plaintiff's petition filed in the county court of Douglas county, in re estate of John D. Thomas, deceased, alleges that he is the illegitimate child of John D. Thomas; that the latter, about April 8, 1876, in a writing, signed in the presence of competent witnesses, acknowledged himself to be plaintiff's father. He asked to be adjudged and considered an heir of the estate of John D. Thomas. The probate court decided against him. He appealed to the district court of Douglas county with the same result, and brings a petition in error to reverse the latter judgment. To this end he claims that the district court erred in holding that this was an equitable action, and that by so doing it deprived him of a jury trial. It appears that the action was originally docketed in the district court as a law action; that subsequently, on defendant's application, and over plaintiff's objection, it was transferred to the equity docket. It appears, however, that when the cause was called for trial parties were expressly asked if they demanded a jury, and replied in the negative. It would seem that this was a waiver of any error that might have been committed by reason of docketing the cause as one in equity.

It is next complained that the testimony of the witness Sylvia E. Thomas, was by the district court erroneously excluded on the ground that the witness was incompetent. This witness was on September 1, 1875, married to the deceased in Omaha, Nebraska, and was about April 8, 1876, the time of the transactions as to which she was in-

terrogated, living with him as his wife. On February 17, 1886, the deceased was by this court granted a decree annulling said marriage on the ground that at the time it was entered into Sylvia E. Thomas had a former husband still living. It is claimed that the marriage of the deceased, having been annulled for this reason, was as if it had never been, and that there was no incompetency on her part to testify in this action. The witness was, however, held to be incompetent, and her evidence excluded, and on this ground it is claimed the judgment should be reversed. It is insisted, on the other hand, by the defendant in error, and by the guardian *ad litem* in the action, that even if the witness was competent, and her testimony wrongly excluded, it was, nevertheless, error without prejudice. The court, at the end of plaintiff's testimony, dismissed the case without hearing any evidence on the part of the defendant estate on the ground that none had been produced on behalf of plaintiff. It is claimed that the entire transaction of alleged legitimation had been testified to by the witness Martha Haight. In order to sustain the action of the trial court, it is necessary to hold that the statements of Martha Haight, if taken as true, are insufficient to maintain plaintiff's claim. If the testimony of Sylvia E. Thomas was desired only to corroborate Martha Haight's statement, it could certainly have no greater effect than to cause the latter to be taken as true. If, as defendant claims, the evidence received and that offered, taken together, do not make a case, then it was no error to dismiss it. An examination of the testimony offered by this witness discloses that the only evidence tendered on her part was as follows:

"The petitioner offers to prove by the witness Sylvia E. Thomas that an agreement was drawn up between Mrs. Martha Haight and John D. Thomas, deceased, on the 8th day of April, 1876, being drawn up by William L. Peabody, and signed by John D. Thomas, deceased, and Mrs. Martha Haight, and was in words and figures as follows:

" 'This agreement entered into by and between John D.

Thomas, party of the first part, and Martha Haight, party of the second part, Witnesseth:

"'First. That John D. Thomas, the party of the first part, hereby acknowledges himself to be the father of Frank P. Thomas, the child born to Martha Haight on the 4th day of March, 1876, and in consideration of that fact, does hereby agree with the party of the second part that he will pay her the sum of $200 in payments of $16.66⅔ upon the first of each month for one year, and that at the end of said year he, the party of the first part, hereby agrees to adopt the said Frank P. Thomas according to the laws of the state of Nebraska.

"'Second. Martha Haight, the party of the second part, in consideration of the foregoing, hereby agrees with the party of the first part that she will at the end of one year, surrender up the said child, Frank P. Thomas, to the said John D. Thomas, party of the first part, and relinquish all rights to said child, and further agrees that she hereby relinquishes all claim and right against the said John D. Thomas, party of the first part, on account of any claim that she may have against him as being the father of her illegitimate child, Frank P. Thomas.'"

The witness Martha Haight testified to the drawing up of an agreement by William L. Peabody of that date, and its signature by herself and by the deceased, and that she and the deceased and Mrs. Sylvia E. Thomas and Mr. Peabody were all present. Martha Haight also testified that the paper "read that he was to pay me so much a month until Frank was a year old, and then he acknowledged,— he said that he was the father of the child, and that he would take it at the end of the year,—why, he would take it and take it to his own home and have it adopted to him, because he said that he was abler for to do for it than I was, and Mr. Peabody drew up the writing to that effect that Mr. Thomas was to pay me so much a month until the child was a year old, and then that he was to take it and take care of it and see that it was well done by." In response to the question, "Have you stated all that that

written instrument contained?" she replied, "Well, only about the most particular part of it; Frank's name and his age was in there." "State all that you remember, whether it is particular or not?" "Well, the most of it that he was to take him, and he acknowledged he said that he was the father of the child, that he had no right to dispute it, and he said that he would take him and adopt him." It would seem that the statements of Martha Haight covered all the essential matter embraced in the offer of testimony by the witness Sylvia E. Thomas. If the facts stated by Martha Haight, taken as true, established no right on the part of plaintiff as an heir of deceased, the mere signing without attestation or delivery of the agreement offered to be proved by Mrs. Thomas would show none. It is not necessary, therefore, to consider this objection further until it is decided whether the facts offered would have availed anything if found true.

The third and final objection to the action of the trial court is that it sustained the defendant's motion to dismiss the proceeding at the end of plaintiff's testimony on the ground that there was no evidence tending to establish his claim of legitimation. This claim rested on the testimony of Mrs. Dollie Winters, the claimant's half sister, who testified that on one occasion she asked the deceased the claimant's age, and was told by him that claimant was then thirteen years old, and the deceased added: "Any time you lose his age I have the papers that were drawn up between me and your mother; it is right in the trunk," —and he pointed to the trunk. Witness also testified to his buying clothes and school books for the claimant. Martha Haight testified that the claimant was the son of John D. Thomas; that he was born March 4, 1876; that she was then an unmarried woman and was never married to John D. Thomas; that she was present in William L. Peabody's office in Omaha, Nebraska, about April 8, 1876, and the transactions occurred as to which her statement has been given; that the deceased paid her the $16.66⅔ monthly for one year as agreed; that she had never seen

the writing since the time of its signing when the deceased took it; that this writing was signed on the next day after she had entered a complaint against John D. Thomas for bastardy. Demand had been made for this writing upon the administratrix and her counsel. She and they denied all knowledge of it. It is claimed by them to be void because not delivered, not attested, and so not fully executed. It is also objected that it does not state that Frank P. Thomas was an illegitimate child, nor express any intention to make him an heir, and that, taking the agreement to have been as was offered to be shown by Mrs. Sylvia E. Thomas, such legitimation was to be by a subsequent adoption, which never took place. If this statute is to be taken as merely requiring a particular form of evidence of paternity in order to render any illegitimate child competent to inherit and only one that shall comply with the bare terms of the law, then the dismissal was erroneous. There was certainly competent evidence of such a writing having been in existence. It is true that, as tendered in proof, this agreement was a mere incident to the settlement with the mother. There is, however, proof given and tendered that there was a writing, signed by John D. Thomas in the presence of witnesses competent to testify, in which he acknowledged himself to be the father of claimant. It is earnestly contended on the latter's behalf that this is all that is required.

In this view counsel are strongly supported by the case of *Blythe v. Ayres*, 96 Cal., 532. That court is expressly construing this same statute, and holds that holographic letters of the decedent, whose signing was seen by competent witnesses, were a sufficient compliance with the requirements of the law. This conclusion, so far as it rests on the ground that this statute was intended to permit any child born out of wedlock to inherit from his father, if he could prove his parentage in this way, was without dissent. The California court cites two holdings from Louisiana that the somewhat similar provisions of the Louisiana Code, drawn from the civil law, are simply to

provide a means of evidence. In *Succession of Fletcher,* 11 La. Ann., 59, 60, the decedent had made a deed of manumission of a slave, describing her as his "natural daughter slave," and executed it with all the formalities necessary in acknowledging the parentage of an illegitimate child. It was held to have that effect in addition to its manifestly intended one of setting her free. In *Remy v. Municipality No. 2,* 11 La. Ann., 148, 159, the same effect was given to a will which contained an acknowledgment of paternity, and had been executed in the manner prescribed for such acknowledgments. Both are supported by French citations to the effect that only evidence of paternity of a particular kind is required. In *Gaines v. Hennen,* 24 How. [U. S.], 553, 602, these provisions as to acknowledgment are discussed and traced to Justinian's Novel, 117, and held to provide only for such specific evidence. Some cases are cited from Pennsylvania in which the statute requiring only that wills shall be executed in presence of two witnesses is held not to require any signature or attestation by them. *Combs' Appeal,* 105 Pa. St., 155, 159; *Camp v. Stark,* 81½ Pa., 235, 238. A similar holding that no more formalities can be required than the legislature has expressly provided appears in *Will of Smith,* 52 Wis., 543, 547, and in *Welch v. Adams,* 63 N. H., 344. It is to be said, however, that in *Beach v. Botsford,* 1 Doug. [Mich.], 199, 40 Am. Dec., 45, a requirement that a confession of judgment must be in writing, signed in presence of the justice and one or more competent witnesses, is held to require their attestation. In *Pina v. Peck,* 31 Cal., 359, the court, with the concurrence of only three members,—the other two apparently not sitting,—held that a will duly signed and witnessed, describing the legatee as "my daughter," and bequeathing to her personal property, was of no force to enable the natural child to inherit real estate, because not made with the intention to legitimate her and so not within this statute. The decision is placed on the ground that the statute is in derogation of the common law, and so is to be construed strictly. This case is expressly overruled in

*Blythe v. Ayres, supra,* because, first, it was concurred in by only three justices; and, second, because since its decision the statute had been incorporated into the California Code, together with a provision that the Code should be liberally construed, and not with reference to the common law. If this statute is to be construed as simply providing for special evidence of paternity, the fact that the writing was never delivered would seem to be without importance. Neither had the will ever been delivered in *Remy v. Municipality No. 2, supra.* It would not matter who had it if it was simply evidence of paternity. If, however, an intention to change the status of the child is required on the father's part, if the writing was in the nature of a grant of inheriting capacity, and to be effective must evince an intention of the deceased to make the claimant one of his heirs, then his retention of it would show that such intention was imperfect, and that he desired still to retain his control of the matter. The nondelivery of a memorandum sufficient to satisfy the statute of frauds, is held to vitiate it, for the reason that it shows an imperfect execution, and to pass rights there must be such a delivery as places the instrument beyond the control of the maker. *Wier v. Batdorf,* 24 Nebr., 83. If, as defendants in error claim, an instrument for the express purpose of acknowledging the claimant was necessary, he has no right. The writing itself, in providing for a future action of the deceased which should confer on the claimant the rights of a legitimate child, clearly negatives any intention to do so by means of the agreement then made with the mother. The retention of the instrument would be a further indication of lack of such then present intention. Ordinarily, of course, the intention to give a natural child the right of inheritance would concur with the making of the instrument. The cases in which there would not be such concurrence would be comparatively few. The question seems not to have arisen in Maine, where this statute has been in use since 1838 at least. Laws of Maine, 1838, ch. 338. In Nebraska the first territorial legislature

adopted the Iowa statute that an illegitimate child should inherit from one who should acknowledge him as a child, but such recognition must have been general and notorious, or else in writing. Session Laws, 1855, p. 75. In 1856, another statute was passed allowing illegitimate children to inherit only on the intermarriage of the parents and the father's acknowledgment of parentage. Session Laws, 1856, p. 125. In 1860, the present law was enacted. Session Laws, 1860, p. 64. As shown in the California cases, the question here is one of construction. It would seem that the common law of this subject is pretty thoroughly eliminated in Nebraska. There are some few cases in this country which adopt the rule that, in passing upon the rights of illegitimate children to inherit a strict construction must be followed, as all such rights are statutory. At common law the illegitimate, like the alien, had no heritable blood. The construction as to the alien is that, unless he is expressly mentioned, he has no part in statutes of descent. *Stemple v. Herminghouser,* 3 G. Greene [Ia.], 408; *Crane v. Reeder,* 21 Mich., 24; *Orr v. Hodgson,* 4 Wheat. [U. S.], 453. The rights of illegitimate children have sometimes been treated in the same way. *Pina v. Peck,* 31 Cal., 359; *Furgeson v. Jones,* 17 Ore., 204. In *Hunt v. Hunt,* 37 Me., 333, in construing this same statute, the court says: "Who are entitled to inherit as heirs of a deceased person, is, in this state, to be determined only by the provisions of the statute in force at the time of his decease. No rules of the civil or common law, further than they are adopted by the statute, can afford them the least aid." Generally, the courts hold that statutes for the relief of illegitimate children should have at least a fair construction. *In re Jessup,* 81 Cal., 408; *Blythe v. Ayres,* 96 Cal., 532; *Dickinson's Appeal,* 42 Conn., 491; *Swanson v. Swanson,* 32 Tenn., 446. Even the alien, when expressly mentioned, is given whatever the statute clearly calls for. It is to be noted that the statute merely calls in this instance for an "acknowledgment" of a fact. It makes the illegitimate child "an heir of the person who

shall, in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child." If no more is asked of this son than the statute by its terms requires, he is entitled to a share of his father's estate if the evidence given and offered on his behalf is true. Whether or not it is true, he is entitled to have a jury decide if this statement of his father's is required merely as evidence of his paternity. Such we conclude it is. The question which was not decided in *Lind v. Burke,* 56 Nebr., 785, it seems to us should be decided in the negative. No intention or desire that the child should become an heir seems needed if his father is pointed out by an acknowledgment of the paternity in the latter's own hand, signed in the presence of a competent witness. Neither does it seem that the court should add to this statute any requirement of delivery of this evidence, or that it be expressly mentioned that the child is illegitimate, or that the witness attest the writing. The statute might require all this, but by its terms does not.

Since, under this conclusion, a new trial will be necessary, the question as to the competency of Mrs. Sylvia E. Thomas to testify must be examined. As above stated, in April, 1876, she was living with deceased as his wife. In 1886 her marriage to him was by this court annulled on the ground that when it was contracted she had a former husband living. It does not seem to be disputed that at the time her testimony was tendered she was a competent witness. It had long been found that the marriage to Thomas had never been a lawful marriage, and as soon as this was legally established, the supposed wife became a competent witness against her supposed husband. *Miles v. United States,* 103 U. S., 304, 314. The marital privilege, however, would still apply to all communications made by the deceased while maintaining innocently marital relations with the witness. It is sought to claim that the evidence tendered in this case was so obtained. The objection, however, was to the competency of the witness to testify to any transactions of her supposed husband.

In sustaining this objection the court went beyond the rule established in section 332 of the Code of Civil Procedure, which only prohibits testimony as to communications of one to the other while married, and applied section 331. In this the trial court seems to have erred.  Section 331, disqualifying the witness, seems to apply only while the relation subsists.  In this case it had been doubly dissolved by annullment and death.  1 Greenleaf, Evidence, sec. 338.  It is earnestly claimed that even section 332 does not apply, and Greenleaf's Evidence, volume I, section 339, is cited to uphold the contention that, where no lawful marriage existed, even communications are not privileged. Greenleaf does not fully sanction the doctrine, and we do not think it is in accordance either with section 328 or with section 332 of our Code of Civil Procedure.  It does not seem, however, that the transaction of making this agreement with Martha Haight in the presence of Peabody should be regarded as a private transaction between husband and wife, or what she saw and heard of it, as a communication, so far as the facts are shown in this record. *Bigelow v. Sickles,* 75 Wis., 427.  A thorough examination of the proposed witness on her *voir dire* should be made, and no evidence of facts learned by communications from the deceased while they held the relation of husband and wife should be permitted.  What she learned otherwise than through her husband's communications to her would, however, seem competent.

It is therefore recommended that the judgment of the district court be reversed, and the cause remanded for further proceedings.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.