SAMUEL W. HAYES, CHIEF JUSTICE.
MATTHEW J. KANE, VICE CHIEF JUSTICE.
R. L. WILLIAMS,
JOHN B. TURNER,       JUSTICES.
R. H. LOOFBOURROW,

HOLLOWAY v. McCORMICK *et al.*

No. 3261.   Opinion Filed November 25, 1913.

(136 Pac. 1111.)

1.   DESCENT AND DISTRIBUTION — Right to Inherit — Uxorcide.
     The power to declare the rule for the descent of property is
     vested in the Legislature; and where it has provided in plain
     and peremptory language that a husband shall inherit from his
     deceased wife, and no exception is made on account of criminal
     conduct, the court is not justified in reading into the statute
     a clause disinheriting a husband because he feloniously killed
     his intestate wife.

2.   BASTARDS — Acknowledgment of Paternity — Sufficiency.   A
     writing, to constitute an acknowledgment of paternity within
     the meaning of section 8420, Rev. Laws 1910, must be one in
     which the paternity is directly, unequivocally, and unquestion-
     ably acknowledged.

3.    **SAME.**   This statute prescribes the kind of evidence necessary to establish the right of heirship to the father by his illegitimate offspring.   The writing introduced in evidence, examined and held to be insufficient, as an acknowledgment, to fulfill the requirements of that portion of section 8420, Rev. Laws 1910, which reads as follows:   ''Every illegitimate child is an heir of the person. who in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child.''

(Syllabus by Galbraith, C.)

Error from District Court, Okfuskee County;
John Caruthers, Judge.

Action by Joe McCormick against Robert Holloway, a minor. and another for partition of land.   From the judgment defendant Holloway brings error, and plaintiff files a cross-petition in error. Reversed and remanded.

Burford & Burford, for plaintiff in error.

J. B. Patterson and C. B. Conner, for Joe McCormick.

T. H. Wren, guardian ad litem, for defendant in error Luther McCormick.

Opinion by GALBRAITH, C.   This was an action in partition, commenced by Joe McCormick in the district court of Okfuskee county, against Robert Holloway, a minor, claiming that plaintiff and defendant were each the owners of an undivided one-half interest in an allotment of land located in said county, which had been allotted to Lucinda McCormick, a freedwoman, who died in said county, intestate, on August 5, 1909, and praying for a partition of the land between said owners.   The defendant answered by his guardian, admitting that he was a minor under nineteen. years of age, and also that Lucinda McCormick died intestate, in Okfuskee county, Okla., on August 5, 1909, seised and possessed of an allotment of land, describing it, and he admitted also that he was the sole and only surviving brother of Lucinda McCormick, deceased, and specifically denied the other allegations of the petition.   For further answer the defendant alleged that Lucinda McCormick died intestate, as aforesaid, and was the owner in fee and possessed of an allotment of land, and

also that she left no father or mother or issue of her body, and left no brother or sister, except the defendant, and that the defendant was the only surviving relative of the deceased; that at the time of her death Lucinda McCormick was married to one Leonard McCormick, who was her lawful husband, and also that Leonard McCormick died on the same day as Lucinda McCormick, but denied that Leonard survived Lucinda, and alleged that the husband was survived by the wife, and that Leonard McCormick never became seised of any interest in her real estate, and that the plaintiff, Joe McCormick, who was the father of Leonard McCormick, did not inherit any part of said allotment, through his deceased son; and also setting out that one Luther McCormick, the infant son of Daisy Hamm, an illegitimate son of Leonard McCormick, deceased, claimed an interest in said real estate, and claimed to be an heir of his father, and asked that Luther McCormick be made a party to said action, and required to set up whatever claim or interest he might have in said lands, and further set out that on the 5th day of August, 1909, the said Leonard McCormick, deceased, willfully and feloniously murdered his wife, Lucinda McCormick, and on the same day committed suicide; that, even if the said Leonard McCormick did survive his wife, both he and those claiming through him thereby became incapable of enjoying any of the property of the said Lucinda McCormick, because of the murder aforesaid.

By proper proceeding Luther McCormick was made a party defendant in said action; and a guardian *ad litem* appointed for him, and an answer was duly filed, setting out that his father, Leonard McCormick, had in writing, and in the presence of a competent witness, duly acknowledged him as his son, and that he therefore inherited one-half of the allotment of Lucinda McCormick, deceased, or the part that his father inherited.

The new matter set out in the answers of the defendants was denied by reply. On the issues thus made the cause was submitted to the court for trial. The court found:

"That on the 5th day of August, 1909, Leonard McCormick purposely shot and killed his wife, Lucinda McCormick; that said Lucinda McCormick died intestate on said date, without

issue, leaving surviving her her husband, Leonard McCormick, and her brother, Robert Holloway, as her sole and only heirs at law; that said Lucinda McCormick, at the time of her death, was seised in fee simple of the following described lands, which said lands had been allotted to her in her own right as a freed-woman of the Creek Nation of Indians, to wit, the S. W. ¼ of section 20, township 12 N., range 8 E. and the W. ½ of the N. E. ¼ of section 30, township 12 N., range 8 E. of the Indian Meridian, situate in Okfuskee county, Okla.; and that upon her death the said Robert Holloway and the said Leonard McCormick each inherited an undivided one-half interest in and to the said lands of which the said Lucinda McCormick died seised as above described. The court further finds that on the said 5th day of August, 1909, the said Leonard McCormick, immediately after taking the life of his wife, Lucinda McCormick, took his own life, then and there dying intestate, leaving surviving him his father, Joe McCormick, and his illegitimate son, Luther Mc-Cormick; that the mother of said Leonard McCormick died be-fore the date on which said Leonard McCormick died; and that he left no issue surviving him other than said illegitimate child, Luther McCormick. The court further finds that on the 5th day of July, 1909, the said Leonard McCormick acknowledged in writing, signed in the presence of a competent witness, that he was the father of said Luther McCormick, and that, by reason of said acknowledgment of said Leonard McCormick, the said Luther McCormick became the heir at law of the said Leonard McCormick, and, as such, inherited from said Leonard McCormick an undivided one-half interest in and to the lands above described."

The court accordingly decreed that the plaintiff, Joe McCor-mick, take nothing by his suit, and that the defendants, Robert Holloway and Luther McCormick, were the joint owners of the land hereinabove described, and that each was the owner of an undivided one-half interest and entitled to share equally there-under, and appointed three commissioners to make partition of the lands between the defendants. The defendant, Robert Hol-loway, excepted to that part of the decree giving Luther McCor-mick a one-half interest in the allotment, and perfected an ap-peal to his court. Joe McCormick excepted to the entire decree, and also perfected an appeal to this court, filing a cross-petition in error.

It is contended by the plaintiff in error that a murderer cannot acquire title to property by his crime and hold it, nor can any one claiming under him; that although the legal title to one-half of the allotment of Lucinda McCormick passed, upon her death, to her husband, equity will treat him and those claiming under him as constructive trustees of the title, because of the unconscionable mode of its acquisition, and compel them to convey to the heirs of the deceased exclusive of the murderer. This contention is urged upon the court by ingenious argument, and finds some support in authority. However, none of the cases are exactly in point with the case at bar; they being cases construing a will, or those which concern the proceeds of insurance policies on the life of the murdered person, where the claimant was an active participant causing the death of the testator or insured. The statute of descent in force in 1909, at the time of the death of the allottee and her husband, provides (section 8984, Comp. Laws 1909, Rev. Laws 1910, sec. 8417):

"The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the county court, and to the possession of any administrator appointed by that court for the purpose of administration."

Section 8985, *Id.* (Rev. Laws 1910, sec. 8418), also provides:

"When any person having title to any estate not otherwise limited by marriage contract, dies without disposing of the estate by will, it descends to and must be distributed in the following manner."

It will be observed that the statute is general in its terms and makes no exception. The Supreme Court of Kansas said, in reply to a similar contention to that made by the plaintiff in error:

"Although a theory cutting a murderer out of any benefit resulting from his crime appeals to the court's sense of justice, it cannot be overlooked that the Legislature has the power to declare a rule of descents; it has done so in language that is plain and peremptory, and no rule of interpretation would justify the court in reading into the statute an exception or clause disinheriting those guilty of crime." (*McAllister v. Fair,* 72 Kan. 540, 541, 84 Pac. 112, 115, 3 L. R. A. [N. S.] 726, 115 Am. St. Rep. 233, 7 Ann. Cas. 973.)

Chief Justice Johnson, speaking for the Supreme Court of Kansas in the case from which the above excerpt was taken, answers the argument of the plaintiff in error, advanced in support of his theory, so fully that we feel justified in making the following quotation from that opinion:

"It is conceded that the statute is general and inclusive in its terms, but it is said to be inconceivable that the Legislature intended to give an estate to a husband who murdered his wife to obtain it. It is argued that the letter of a statute should not prevail over its sense and spirit, and that a literal interpretation of the statute in question would in effect be giving property as a reward for crime. It is said that the Legislature is presumed to have enacted the statute in question having in view the maxim of the common law that no man shall take advantage of his own wrong, or acquire property by his own crime, or use the law to accomplish his unlawful purposes, and therefore that the courts are justified in imputing a different intention to the Legislature and excepting murderers from the operation of the statute. These considerations would have great weight if there were ambiguity in the statute, or if it were the province of the court to settle the policy of the state with respect to the descent of property or as to the character and extent of punishment which should be inflicted for the commission of crime. That any one should be given property as the result of his crime is abhorrent to the mind of every right-thinking person, and is a strong reason why the lawmakers, in fixing the rules of inheritance and prescribing punishment for felonious homicide, should provide that no person shall inherit property from one whose life he has feloniously taken. A statute of this character has been enacted in at least one state. Iowa Code 1897, sec. 3386; *Kuhn v. Kuhn*, 125 Iowa, 449, 101 N. W. 151 [2 Ann. Cas. 657]. The horror and repulsion caused by such an atrocity, however, do not warrant the court in reading into a plain statutory provision an exception which the statute itself in no way suggests. If the statute were of doubtful meaning and open to two constructions, there might be room to infer that the Legislature intended the one which would be most reasonable and just in its application. As will be observed, however, the rule of inheritance is explicit, and the statute contains no hint that any one is to be excluded on account of misconduct or crime. In *Ayers v. Com'rs of Trego Co.*, 37 Kan. 240, 15 Pac. 229, the court was asked to read into a statute a meaning which its words did not import, and the reply was

made: 'We have not the right to change the statute where it is clear and free from ambiguity, by any judicial interpretation.'" (*McAllister v. Fair, supra.*)

It does not appear from the record that the husband, Leonard McCormick, murdered his wife for the purpose of securing her property. It does not appear that the desire to possess her property was in his mind or in any way induced the crime. It will be observed that the statute of descent makes nearness of relationship to the decedent, and not the character or conduct of the heir, the controlling factor as to the right of inheritance. The Criminal Code provides penalties for homicides and other crimes, and the loss of inheritable quality or the forfeiture of an estate is not among the penalties prescribed in the code. If we should hold that the loss of heirship and the forfeiture of an estate were a consequence of McCormick's crime, we would be compelled to ignore the legislative rule governing the descent of property, and would, in effect, impose a punishment for his crime in addition to that prescribed by the only body authorized to declare penalties for violations of law. Again, such construction of the statute is expressly forbidden by the Constitution of the state, which provides that "no conviction shall work a corruption of blood or forfeiture of estate." Article 2, sec. 15, Williams' Ann. Const. Okla. We cannot so hold.

Another reason why we could not hold that Leonard McCormick's crime in murdering his wife deprived him of the right to inherit property from her and denied the claim of his heirs to such property after his death, is that this court is committed to the contrary doctrine. In *de Graffenreid et al. v. Iowa Land & Trust Co.,* 20 Okla. 728, 95 Pac. 640, Mr. Justice Turner, speaking for the court, said:

"But if it were true that he murdered her for the purpose of at once getting possession of her property by inheritance, we do not think that would disqualify him from inheriting. 14 Cyc. p. 61, says: 'By the weight of authority, in the absence of express provisions excluding from inheritance an heir murdering the intestate, the operation of the statute of descent is not affected by the fact that the ancestor was murdered by the heir apparent in order to obtain the inheritance at once, and therefore an heir who murders his ancestor in order that he may inherit the estate at once is not disqualified from taking.' (And

authorities cited.) That being the rule, when the killing is done for the purpose of inheriting, it follows, *a fortiori,* that the same should be the rule when no such intention appears, and therefore we hold that Ben Reeves, because of the fact that he murdered his wife, Castella Brown, is not disqualified from inheriting from her under the Creek law of descent and distribution, and therefore the plaintiff in error, de Graffenreid, took, by his conveyance set forth in this cause, his entire interest in the allotment of said Castella Brown."

We conclude that the plaintiff in error obtained by the decree of the court below all he was entitled to, namely an undivided one-half interest in the estate of his deceased sister, Lucinda Mc-, Cormick, and that his assignment of error must be overruled.

The questions presented by the cross-petition in error of Joe McCormick challenge the correctness of the finding and conclusion of the trial court that the deceased, Leonard McCormick, had made an acknowledgment in writing, in the presence of a competent witness, that he was the father of the defendant, Luther McCormick, and therefore constituted him his heir. It is contended that there is no evidence to sustain this finding of the court. The statute (Rev. Laws 1910, sec. 8420) reads:

"Every illegitimate child is an heir of the person, who in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child."

At common law the illegitimate child had no inheritable blood. 2 Blackstone, 247. This statute is remedial in its nature and purpose. It confers upon this class of unfortunates equal rights of inheritance with legal heirs and prescribes the kind of evidence necessary to establish the right of *nullius filli* to the heirship of the father. The right can only be established by the kind of evidence required by the statute. There must be an acknowledgment of paternity by the father made in writing and in the presence of a competent witness. The writing need not necessarily be made for this particular purpose, but an acknowledgment of paternity must be certain, clear, and unambiguous. In other words, the writing must be complete within itself, at least so far as the acknowledgment of paternity is concerned, and must not require aid from extraneous evidence as to this fact. *Lind v. Burke,* 56 Neb. 785, 77 N. W. 444; *Thomas v. Thomas,*

64 Neb. 581, 90 N. W. 630; *Pederson v. Christofferson,* 97 Minn. 491, 106 N. W. 959; *Moore v. Flack,* 77 Neb. 52, 108 N. W. 143; *Blythe v. Ayres,* 96 Cal. 532, 31 Pac. 915, 19 L. R. A. 40.

The writing relied upon by the defendant in error, and which the trial court held to be sufficient acknowledgment within the meaning of the statute, reads as follows:

"Boley, Okla., July 5, 1909.  Mrs. Daisy Hamm—Dear Friend:  I will be over to Sapulpa some time this month to see you and Luther.  Take good care of my boy.  I will bring him some clothes when I come.  I would send you some money today but I am all in.  Uncle Lige Walker the man that come with me over there is very low.  D. M. kept your letter a week before he gave it to me.  Kiss Luther for me from your old love. Leonard McCormick."

The evidence shows that this writing was a letter produced at the trial by the mother of Luther McCormick, who testified that she received it by due course of mail while living at Sapulpa, Okla.  She also testified that the signature to the letter was that of Leonard McCormick.  The party who wrote the letter testified that he wrote the same at the request of Leonard McCormick, who dictated the contents of the letter to him, and when the same had been written that Leonard McCormick, with his own hand, signed his name thereto.  If the letter had been written by Leonard McCormick himself, and mailed as it was, there can be no question that it would not have been a sufficient acknowledgment within the terms of this statute.  Thus the question arises:  Can the accident that a third party wrote the body of the letter at the request of Leonard McCormick make it sufficient evidence of acknowledgment of paternity?  The statute of Nebraska is practically the same as section 8420, above quoted. The Supreme Court of Nebraska say, in construing this statute, in *Lind v. Burke et al., supra:*

"We are satisfied that a writing, to fulfill the requirements of the law which we have quoted, must be at least one in which the paternity is directly, unequivocally, and unquestionably acknowledged.  Whether it should go further than this, we have before stated, we need and do not now decide; but so much it must voice, to be of force, in the light of this view of the requisites of the evidence."

Also, further on in that opinion, the court said:

"It must not be forgotten, in this examination, that it is not because the person can be shown to be the offspring, or is in fact the illegitimate child, that it may assert heirship, but because it has been in writing acknowledged; and hence the writing must be, in and of itself, sufficient, unaided by extrinsic evidence, to establish the paternity."

The Nebraska court, in the latest case of *Thomas v. Thomas,* 64 Neb. 590, 90 N. W. 634, said:

"No intention or desire that the child should become an heir, seems needed if his father is pointed out by an acknowledgment of the paternity in the latter's own hand, signed in the presence of a competent witness. Neither does it seem that the court should add to this statute any requirement of delivery of this evidence, or that it be expressly mentioned that the child is illegitimate, or that the witness attest the writing. The statute might require all this, but by its terms does not."

In *Moore v. Flack, supra,* the facts are very similar to those in the instant case. The writing relied upon to constitute the acknowledgment was a letter written by the father to the mother, and the particular language used was "take good care of our boy and call him Thomas Moore, and I will give him a good start some day." The court held that this writing was "clearly insufficient" to constitute an acknowledgment of paternity within the statute.

The state of Minnesota also has a statute almost identical with that above quoted. In *Pederson v. Christofferson, supra,* the instrument relied upon as constituting the acknowledgment was a lease, and the language used was:

"The said Hans Pederson hereby acknowledges that he is the father to the said Mari Hansdatter (Ronning)."

In discussing the statute, the court said, in part:

"This statute was not intended for the benefit or relief of fathers of illegitimate children; but it was intended for the benefit and protection of such children and to mitigate in some measure the vicarious punishment imposed by the common law upon them for the sins of their fathers. It must, then, be liberally construed. It does not require the acknowledgment of fathership to be in any particular form, or that it should be made with any particular intent. The essential thing is the acknowledgment, the

proof of which must be in writing, signed as the statute requires, which is silent as to the character or purpose of the instrument in which the acknowledgment is found. We cannot read into the statute by construction such omissions. The proof of the father's admission or acknowledgment must, however, be in writing, signed by him, in the presence of a competent witness, and it must by its terms clearly and specifically acknowledge the person therein named to be the child of the party signing the writing. This is necessary to avoid spurious claims of heirship. The decisions of other courts construing similar statutes are conflicting as to the form and character of the instrument of acknowledgment. This is a new question in this state, and we hold, upon principle and what seems to be the weight of judicial authority, that the statute does not require that the instrument, acknowledging the paternity of the child, must be made for the express purpose and in a separate instrument, but that it is a sufficient compliance with the statute if it be made in any written instrument, collateral or otherwise, signed by the party, in the presence of a competent witness, in which he clearly and specifically acknowledges that he is the father of the child. *Blythe v. Ayers,* 96 Cal. 532, 31 Pac. 915, 19 L. R. A. 40; *In re Gorkow's Estate,* 20 Wash. 563, 56 Pac. 385; *Rohrer v. Muller,* 22 Wash. 151, 60 Pac. 122, 50 L. R. A. 350; *Remy v. Municipality,* 11 La. Ann. 148; *Brown v. Iowa Legion of Honor,* 107 Iowa, 439, 78 N. W. 73. Exhibit B contains a clear and specific acknowledgment by Hans Pederson that he was the father of the contestant."

Under the rule announced in the above cases, the writing relied upon to constitute the acknowledgment of the paternity of Luther McCormick is clearly insufficient.

"I will be over to Sapulpa some time this month to see you and Luther. Take good care of my boy. I will bring some clothes when I come. I would send you some money today but I am all in. * * * Kiss Luther for me from your old love."

The court cannot take this writing by its four corners and say it "directly, unequivocally, and unquestionably" acknowledges that Leonard McCormick is the father of Luther McCormick. Extrinsic evidence is necessary to show that the indefinite, ambiguous, and uncertain phrase, "my boy," used therein, even refers to Luther McCormick. This writing being the only evidence of the acknowledgment of paternity permitted by the statute, and it being insufficient, it follows that there was no evidence to sus-

tain the finding of the trial court that Luther McCormick was. the heir of Leonard McCormick and entitled to an undivided one-half interest in the allotment of Lucinda McCormick, and that the exception of the cross-petitioner, Joe McCormick, to such finding must be sustained.

We conclude that the part of the decree finding that Luther McCormick inherited an undivided one-half interest in the lands. of which Lucinda McCormick died seised must be vacated, and the cause remanded, with directions to enter a decree that Joe McCormick, the father, inherited from his son, Leonard McCormick, an undivided one-half interest in said estate, and for further proceeding not inconsistent with the foregoing views.

By the Court:   It is so ordered.