Pérez Villamil et al., Respondents, v. Romano et al., Appellants.

Appeal from the District Court of San Juan, Section 1.

No. 878.—Decided June 27, 1913.

Natural Children—Acknowledgment by Public Document—Admissions by Putative Father in Suit for Support.—In the year 1873 the mother of the plaintiffs brought suit in the Justice of the Peace Court of Río Grande against Ramón Pérez Villamil, predecessor óf the defendants, for a decree ordering said Pérez Villamil to pay to her weekly or daily a sum sufficient to support the three children she had borne him, said children being the plaintiffs in this suit. Said Pérez Villamil, who at that time was the justice of the peace of said town but did not act as such in the case on account of having been challenged by the plaintiff, admitted during the trial, among other things, that the plaintiff had lived with him in his house; that she had had by him the three children named in the complaint and that he had been paying her a certain sum monthly. He concluded by agreeing to pay her ten *pesos* monthly for the maintenance of their children and to give them clothes and shoes, whereupon the justice of the peace rendered judgment to the effect that this agreement then made should be respected and complied with by both the plaintiffs and the defendant. It was held:

1. That the admissions made by said Pérez Villamil at the trial constituted a solemn and public act of acknowledgment of the said three children, the plaintiffs in this action.

2. That the acknowledgment made in that act is inferred from the defendant's words and acts and whether he had a clearly conceived idea that he was creating a status for the children makes no difference.

3. That the record of the proceedings in the justice of the peace court constitutes a public document sufficient for the purposes of the acknowledgment and neither said sufficiency nor the solemnity of the act is in any way affected by' the question of whether the court had jurisdiction of the subject matter or whether the judge was a *de facto* one, if the document itself is genuine and the parties really believed that they were before the proper authority.

Id.—Acknowledgment by Public Document—Tendency of Courts.—Courts always lean in favor of a natural child when the acknowledgment appears clearly and publicly, whatever form such acknowledgment may take, if a faithful record of the same remains, giving to said act a natural and humane interpretation.

Id.—Evidence.—After an examination of the evidence introduced in this case it was held that the document offered to show the acknowledgment of the plaintiffs as natural children of the predecessor of the defendants, was genuine and, being more than thirty years old, comes within the provisions of section 102, subdivision 33, of the Law of Evidence of 1905.

Id.—Celibacy of Parents—Presumption—Burden of Proof.—In an action for the annulment of a designation of heirs brought by the acknowledged natural

children based on a public document, it is not necessary to allege and prove that their parents were both single when said children were born and qualified to contract marriage. A person is presumed to be single until the contrary is shown and in a case of this character the burden of proving that the parents of the natural children could not contract matrimony at the time the children were born in cast on the defendants.

ID.—ACTION FOR ACKNOWLEDGMENT—IDENTITY OF ACTIONS—RES JUDICATA.—In this case the plaintiffs, being unaware of the existence of the document of acknowledgment on which the present action for the annulment of the designation of heirs is based, brought an action for acknowledgment which was decided against them and that judgment has been pleaded by the defendants in this suit as *res judicata.* It was held that said judgment cannot be pleaded in this action as *res judicata* because there is not the element of identity between the two cases which the law requires.

The facts are stated in the opinion.

Messrs. *José de Guzmán Benítez, Francisco de la Torre* and *José Martínez Dávila* for respondents.

Messrs. *Bosch* and *Soto* for appellants.

MR. JUSTICE WOLF delivered the opinion of the court.

Numerous are the incidental questions raised on this appeal, but in the final analysis there are perhaps but two important ones, namely, whether Ramón Pérez Villamil acknowledged the complainants as his natural children and whether he did so in due form. Several years ago the complainants attempted to fix their rights by a suit of filiation, but such suit was held to have prescribed. Thereafter the complainants brought the present action based upon the allegation that they had been acknowledged by their father in the public document, a faithful copy of which accompanied the complaint. The whole case turns on this document so that we have thought it advisable and expedient to reproduce it as follows:

"TO THE JUSTICE OF THE PEACE OF THIS TOWN:

"Telesfora Quiñones, a native and resident of this town, single and of lawful age, brings before your worship an ordinary civil action against Ramón Pérez Villamil, a property owner, merchant and resident of this town, and prays that said Ramón Pérez Villamil be adjudged to pay weekly, or daily to the plaintiff a sum sufficient for the

support of the three children borne him by her during the eight years which she lived with said defendant in his own house, said children being named Angel, Adelina, and Plácida, and having been born respectively on August 5, 1865, November 30, 1866, and February 15, 1868; also that said defendant be adjudged to deliver to plaintiff the amount of the prize won by lottery ticket No. 3081 of the drawing held in the capital on June 23, 1868, said lottery ticket having been delivered to said defendant by plaintiff and he having collected the amount of said prize—all of which will be proven at the proper time.

"Plaintiff further prays that said defendant be duly summoned to answer this complaint; that a day and hour be set for the trial of the suit, and that said defendant be adjudged to pay all the costs accruing herein in the interest of justice, which I ask for in Río Grande, November 4, 1873.

### "SUPPLEMENT.

"The defendant, Ramón Pérez Villamil, being the present judge of this court, I therefore challenge him according to law and pray the court to consider my challenge as made in the strongest possible manner in the interest of justice, which I ask for with date as above.

### "SECOND SUPPLEMENT.

"The present secretary of this court, José Vivas Monge, being an intimate friend of the defendant judge and a bitter personal enemy of the plaintiff, as can be duly proven if required, she challenges him also and objects to his taking part in any of the proceedings relating to this action and the trial thereof, and prays the court to consider this challenge as made in the most solemn manner in the interest of justice, which I ask for dated as above.

"At the request of Telesfora Quiñones, who cannot sign.

"(Signed)          By TOMÁS BENOYT.

"The plaintiff being insolvent, as is known by all the residents of this town, for her only means of livelihood are two *pesos* per month which she earns as cook, she attaches two sheets of pauper's paper Nos. 154267 to 154270 in case the judge should desire to initiate proceedings to establish her pauperism, or, if not, to be used for the records of the trial in the interest of justice prayed for as before.

"At the request of Telesfora Quiñones.

"(Signed)       . By TOMÁS BENOYT.

"Río Grande, November 4, 1873. Let the clerks named by the undersigned summon the defendant, Ramón Pérez Villamil, to appear before this court on Friday the seventh instant at one o'clock p. m. for the trial of the action brought against him by the plaintiff, Telesfora Quiñones, and he may bring such evidence as he deems advisable. Amendment: 'Friday,' valid. Ordered and signed by first substitute justice of the peace, Santo Jiménez, before the undersigned witnesses. (Signed) Santo Ximénes, José Quiñones, Avelino Kindgley. (Seal of the court.)

"On the same day the undersigned clerks repaired to the dwelling house of Ramón Pérez Villamil and summoned him according to law to appear on the day and at the hour fixed by the judge, delivering to him a copy of the complaint and receiving his signature to the summons. (Signed) R. Villamil, José Quiñones, Adelino Kindgley.

"In the town of Río Grande, November 7, 1873, the substitute justice of the peace, Santos Jiménez, assisted by the clerks, José Quiñones and Adelino Kindgley, the regular judge being disqualified on account of being an interested party, and the secretary, José Vivas Monge, having been challenged by the plaintiff, called the case for trial in open court, that being the day and hour set therefor, and the parties being present the trial was proceeded with. The plaintiff announced that she had authorized Tomás Benoyt to speak in her name as her representative and the judge having sanctioned the same, said Benoyt opened with the statement that the complaint filed was ratified in all its parts *verbatim,* and added that the defendant also had in his possession five cows, two of which had calves when delivered to him five years before, and one mare with a foal which belong to the plaintiff, and he desires that they together with the profits from them be delivered to her.

"He then rested for the time being.

"The defendant answered that he had never denied that the plaintiff had lived in his house, nor had he denied the three children mentioned by her, and that for their support he had been paying her five *pesos* monthly since the termination of their former amorous relations. That as regards the live stock and the lottery prize (he did not remember the number of the ticket), he had given her some two years before a document setting forth the particulars concerning them and he did not consider it prudent to deliver to the plaintiff what she asked for, because he should keep this small capital in his possession to manage and increase it for his children as it was acquired by the plaintiff during the time she lived with him, and, further, because as the plain-

tiff is a woman of little ability she would spend all of it in a short time and this he could not consent to as it would be like pouring water into a sieve.

"The plaintiff replied that what Villamil had just said was not true, for although he has been paying her five *pesos* monthly in goods from his store, as stated, it was as interest on the amount of the lottery prize which she delivered to him, and nothing else, and that amount does not begin to meet her needs, because as the children grow up her expenses are increased and the plaintiff can scarcely support them with that amount and the two *pesos* monthly which she earns as a hired cook, and that although she has asked the defendant several times to give her a larger amount, he has refused to do so and she has been compelled to bring this action against her will and without any ill feeling toward Villamil in order to secure that which she claims with urgent necessity and perfect right.

"The defendant rejoined that in view of the observations of the judge and in order that this matter should not take the aspect which certain gentlemen of the locality wish to give it he would agree to pay to the plaintiff, if she were willing, ten *pesos* monthly for the children and give them a change of clothing and shoes every three months, and he considered this sufficient for them, if the plaintiff would give them all the assistance she could also.

"The plaintiff stated that she would accept the offer of the defendant, Ramón Pérez Villamil, if he would be sure to live up to it at all times.

"At this stage of the case the judge declared the trial terminated and stated that as the parties had been able to arrive at an agreement, at which he was pleased, the judgment of the court would be to ratify the agreement made between the plaintiff, Telesfora Quiñones, and the defendant, Ramón Pérez Villamil, in this suit as *res judicata* before a court of competent jurisdiction, with the costs against the defendant.

"Both parties agreed and signed in witness thereof, except that the plaintiff expressed her inability to sign, and at her request her representative, Benoyt, signed for her after the judge and before the undersigned witnesses.

"Amendment: 'dgley' valid. (Signed) Santos Ximénes, Tomás Benoyt, José Quiñones, R. Villamil, Adelino Kindgley. (Seal of the court.) Interlineation, 'Prestado,' valid. Interlineation, 'José Quiñones,' not valid.

"I certify that the foregoing is an exact copy of the original from which I have copied it, and at the request of José Martínez Dávila, Esq., I issue the present in Carolina this 15th day of June, 1911.

"(Signed)   ROSENDO ARCE,<br>
*Secretary of the Municipal Court of*<br>
*Carolina, P. R.*

"(Two canceled I. R. stamps of $1, one of 50 cents and one of 10 cents as fees.)"

The appellants attack the genuineness of this document, but we shall defer the discussion of this point to the consideration of the other important questions raised.

Appellants maintain that this is not the public document necessary for the recognition of a natural child, partially because therein the father is not expressly showing his intention to acknowledge, nor was the suit for that purpose. They also maintain that this record of the Justice of the Peace of Carolina is not any of the public documents recognized by law, being neither the judgment of a competent court nor a notarial act. They contend also that the court of the justice of the peace had no jurisdiction over the particular matter in controversy and no possible jurisdiction over suits of filiation, acknowledgment and the like. Without attempting immediately to meet the specific objections to the judgment of the court below we shall first outline some of the facts of the legal situation as they appear to us.

The appellants concede that supposing the document to be genuine the complainants would have had the right by an action of filiation to compel their father to acknowledge them if they had brought such action in time. But this transcription from the records of the justice of the peace shows something else in this regard. These children through their mother at the time of the proceedings before the Justice of the Peace of Carolina might have exercised such action. Ramón Pérez Villamil admits in such proceeding that the mother had lived in his house; that he had contributed to her sup-

port and the support of the children, and affirms that he had never denied his relations with the mother nor that he was the father of the children named by Telesfora Quiñones in her application to the justice of the peace. He further affirms that he ought to be allowed to retain the proceeds of the lottery ticket, because the same had been acquired during the time that Telesfora Quiñones lived with him, because he ought to be allowed to use such proceeds for the benefit of the children, and because he feared that Telesfora Quiñones would squander the same. Not only does he affirm these facts, but in order to prevent the matter from taking the turn that certain gentlemen in the neighborhood would like to give it, he agrees to pay to the then complainant 10 *pesos* monthly and to do other things for her and their children. So that it was evident that a suit for acknowledgment would have thrived even before the filing of the justice of the peace's suit. The inference is plain that at the time of the suit the paternity of Pérez Villamil to the complainants, and his acknowledgment of them, was a notorious fact. Indeed, he was in the position of a reluctant father.

Ramón Pérez Villamil himself was the justice of the peace, in whose court Telesfora Quiñones brought her suit, and she challenged him. He would have known better than another the jurisdiction of that court. He raised no objection whatsoever, and his manner of answering and his acquiescence in the judgment would have the inevitable tendency to set at rest, at least in the mind of an unlettered person not learned in the subtleties of the civil law, the questions of whether the complainants had been duly acknowledged and given a status of such acknowledged natural children. Telesfora Quiñones was such an unlettered person. Here was a man, the judge and the father, in solemn conclave, acknowledging her children and agreeing to make the provisions she asked to put an end to the litigation. But for this conduct on the part of Pérez Villamil, Telesfora Quiñones might have brought an action of filiation on behalf of her children in the proper

court. There is no doubt in our minds that this was a solemn public act of acknowledgment rendered by Ramón Pérez Villamil.

Did these proceedings reveal the intention of Pérez Villamil to acknowledge the children and is the evidence thereof sufficient? We think on the question of intention the document speaks for itself. Not only does Pérez Villamil acknowledge the children, but he agrees to provide for them and their mother. Whether he had a clearly conceived idea that he was creating a status for his children makes no difference. He was saying in a public place, in a court, "These are my children, I have hitherto provided for their support and I shall continue to do so." His intention to acknowledge springs from his words and acts in the suit in question. He undertook practically every obligation that the institution of the *patria potestas* would demand, and his intention to acknowledge is manifest from his conduct.

We likewise think that these proceedings in the justice-of-the-peace court constituted a sufficient public document. At the instance of the justice of the peace both parties indicated their acquiescence by signing the rolls. No notarial document could be more solemn. Whether the court had jurisdiction or not the parties thought that there was such jurisdiction. The document or act is no less solemn because the court is without jurisdiction or the officer is a *de facto* one if the act is shown to be genuine and the parties really believe that they are before the proper authority. The case of *Blythe* v. *Ayres,* 96 Cal., 584, was a case for the acknowledgment of a natural child. The facts of that particular case are not applicable to the case at bar, but therein Mr. Justice Caroutte reviews a number of authorities, some of which are here applicable. In the case of *Rice* v. *Efford,* 3 Hen. & M., 227, it was held that the recognition of the illegitimate child in a will as the testator's child, the will being void as a will, was sufficient to entitle her to inherit. In the case of *Succession of Fletcher,* 11 La. Ann., 60, Henry Fletcher, in an act

of manumission made before a notary and witnesses, described the party enfranchised by his act as his ''natural daughter, slave,'' and such was held to be a sufficient acknowledgment of paternity under a statute which declared that ''the acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in the presence of two witnesses.'' In that case the court, citing French authorities, held: ''It is said that the words 'natural daughter, slave,' were terms of description foreign to the terms of the act used to manumit a slave and not to legitimize (acknowledge—*sic*) her paternity, but no form is prescribed for such an acknowledgment save only that the declaration be made before a notary public, in presence of two witnesses.'' In *Remy* v. *Municipality,* 11 La. Ann., 159, the court, in referring to the acknowledgment of paternity made in a will, said: ''This document, it is true, was intended to be a will, and has never been admitted to probate as such but though not binding as a will, it is certainly good as an acknowledgment of paternity made in due form.''

We are aware, of course, that the provisions of the Civil Code and the provisions of the statutes of the various States are not identical, but we quote the foregoing cases to show that the courts lean always in favor of a natural child, when the acknowledgment clearly and publicly appears, whatever form such acknowledgment may take, if a faithful record of the same remains. The appellants have cited to us no case from the Supreme Court of Spain which is at all similar in its facts, and without some such citation the natural humane interpretation must prevail.

From this standpoint it becomes somewhat unimportant to examine whether the justice-of-the-peace court had in fact jurisdiction. Perhaps the sum or the things claimed by Telesfora Quiñones in their total exceeded the jurisdiction of such court, but that fact does not clearly appear from the record, and a doubt would also arise as to whether this suit was in its nature more of an act of conciliation than an adversary

suit, and this view is borne out by the fact that Ramón Pérez Villamil signed the rolls and that Telesfora Quiñones had some one sign for her, and the court expressed itself as being satisfied with the agreement reached by the parties.

The genuineness of the instrument is attacked and the appellants introduced in the trial below writings and experts to show that among others the signatures of Villamil and of Jiménez (or Ximénez), the substitute judge, were false. These writings have been certified up to us and we have compared some of them. About the signature of Villamil, we think there could be no doubt whatever, and his signature lends verity to the act and the other signatures and recitals made in the proceedings. In the proceedings Jiménez appears to be acting as the substitute judge. It is true that in earlier papers Jiménez appears to be signing with a "J" instead of with an "X," but Santo Jiménez had a right to change the form of his signature and to use "X" instead of "J." His signature shows that he wrote with difficulty, and perhaps on certain occasions he chose to sign his name with an "X" rather than with a "J." In any event there was a conflict of testimony in the court below, and we see no reason to disturb its finding in that regard. Furthermore, we agree with the court below that as the origin of this document, as coming from the justice-of-the-peace court of Carolina, was satisfactorily shown, the proof, to attack its genuineness, would have had to be very clear. Likewise, it is a document more than 30 years old and would seem to come under the provisions of section 102, subdivision 33, of the Law of Evidence.

The appellants also allege that the complainants failed to show at the time of the trial that at the time of their conception their parents were both single and able to contract marriage. We have held in several cases that a person must be presumed to be single until the contrary is shown, but it must be remembered that this is not a suit for filiation, where requisites of bachelorhood are prescribed, but is a suit for the annulment of a will and the declaration of the complainants

as heirs. They are relying on their previously acknowledged status and the burden of showing that their parents had no right to marry would be cast on the other side.

The appellants also allege that their plea of *res judicata* should have prevailed. At the time that the appellants brought their previous suit the existence of this document was apparently unknown to them. In any event, as we have intimated before, the previous action was one of filiation to acquire the status which in this suit they now maintain that they have had since 1873.

Similar considerations apply to the question of prescription raised by the appellants. The complainants were not seeking to be recognized as the children of Ramón Pérez Villamil, but claiming that such status had already been created by him. Under these circumstances the plea of prescription was unavailing to the defendants. See also the case of *Orama* v. *Oyanguren, ante* p. 788.

The judgment must be affirmed.

*Affirmed.*

Justices MacLeary, del Toro and Aldrey concurred.
Mr. Chief Justice Hernández dissented.

DISSENTING OPINION OF MR. CHIEF JUSTICE HERNÁNDEZ.

In this case an action was brought for the annulment of the designation of heirs made in favor of the defendants by Ramón Pérez Villamil, since deceased, on the ground that the plaintiffs, who allege that they are the acknowledged natural children of Pérez Villamil, were omitted from his will by said testator.

The first question arising for consideration is whether the plaintiffs could maintain an action for the annulment of the designation of heirs without bringing previously, or at least concurrently, an action for acknowledgment.

In deciding the case of *Amsterdam* v. *Puente* on June 17,

1910, (16 P. R. R., 527), we established the following doctrine:

"We think it is a fair deduction from the provisions of the Civil Code, heretofore in existence, as well as the practice and jurisprudence in this regard that, without some authentic act which reveals the will of the father to give the child a status, the child has only a right of action to compel the father to confer such status. Section 135 of the Spanish Civil Code and section 189 of the Porto Rican Civil Code provide for the cases when a father is compelled to acknowledge his illegitimate child. He can be compelled by an action, and the necessity for such action can only be said to be dispensed with when there are some solemn acts on the part of the father, which show that this obligation has already been performed. It is the plain inference from these sections that although a father may have done, as in the case before us, any number of acts to show that a particular person was his child, yet he cannot be said to have acknowledged him according to the legal use of the word 'acknowledgment.' If he may be compelled then before such compulsion the *desideratum* has not been attained. Until there is some solemn act or some declaration on the part of a court a child cannot be said to have acquired the civil status of an acknowledged natural child. In the case under consideration there was no satisfactory evidence of any intention on the part of the father to acknowledge his natural children with all its legal effects."

Again, in the case of *Puente et al.* v. *Puente et al.* (16 P. R. R., 556), we said:

"In order for the appellant, in this case, to have successfully alleged her condition of an acknowledged natural daughter, and make opposition as such, and as such be declared an heir, it was necessary that her acknowledgment should be clearly shown to have been made by the father in a voluntary and formal manner, or that if she had the right to be acknowledged under the law and the father failed to make the formal acknowledgment or declined to do so, that she had obtained a final judgment in her favor from a court of competent jurisdiction and under the proper 'contentious' proceeding.

＊          ＊          ＊          ＊          ＊          ＊          ＊

"It has been the constant practice that when a father fails or declines to make the acknowledgment, that the son must have recourse

to a court of competent jurisdiction and exercise an action for filiation, to secure a judgment of the court declaring what the father failed or declined to declare.''

In another case entitled *Rijos* v. *Folgueras et al.* (16 P. R. R., 593), we expressed ourselves as follows:

''A legitimate child derives his status as such from the *marriage* of his parents. In order that the marriage may be considered to have been effected, the intention of the man and woman to contract is not sufficient, nor that they are living together and have had children, but it is necessary that the act take place in one of the solemn forms authorized by the law and that an authentic and trustworthy record thereof be made.

''A natural child derives his right from the *acknowledgment* and in order that the acknowledgment may be considered to have been made, it is necessary that it be made in a formal manner by the father with the firm intention of making such acknowledgment, and that the proper authentic and trustworthy record thereof appear. When the father performed acts tending to establish his paternity, which acts in themselves did not constitute a formal acknowledgment and of which no authentic and trustworthy record appears, in accordance with the Laws of Toro; when the cases mentioned in section 137 occurred, under the former Civil Code, and when the acts referred to in section 189 of the Revised Civil Code (had been performed), then the action for filiation should and must appear in the former (formal) final judgment of a court of competent jurisdiction.

''Parents who in the fulfilment of their duties wish to transmit to their natural children their surname and property, or the part thereof to which they may be entitled, must make the acknowledgment a matter of record in an authentic and trustworthy manner, for example, in the record of the birth, in a public document, in their will, in a declaration made in due form before an official or court, etc., in order that the natural acknowledged child may prove his status as such in the same manner as the legitimate child.

''When the parents do not recognize (the) natural children in the manner mentioned, then the children must bring an action for filiation and obtain a judicial declaration of their right.

''If the parents and children were negligent, in such case they must suffer the consequences of their acts and blame themselves and not the law which regulated these questions, which are of such great social importance, in a uniform manner and for the good of all.''

Quoting from a judgment of the Supreme Court of Spain of April 16, 1864:

"The status of natural child must be based necessarily on the spontaneous and legally proven acknowledgment by the father; or, in case of his failure or refusal to make such acknowledgment, on a formal judicial declaration of such status."

And from a judgment of the Supreme Court of Spain of June 28, 1864:

"The filiation of natural children must appear necessarily either from the acknowledgment by their parents or from a formal judicial decree."

The same doctrine has been ratified in the cases of *Calaf et al.* v. *Calaf* (17 P. R. R., 185); *Peñagaricano* v. *Peñagaricano et al., ante* p. 472, and *Figueroa* v. *Díaz et al., ante* p. 683.

As will be seen, there is no discrepancy, but perfect harmony, between the doctrine followed in the judgments of the Supreme Court of Porto Rico and in those of the Supreme Court of Spain on the same legal point, rendered when the Spanish Civil Code was not in force.

It may be deduced from the said doctrine that in order that a presumptive natural child may claim any rights in the estate of a deceased person he must rely on an express, voluntary and solemn acknowledgment of his filiation appearing in an authentic and genuine form, or on a judicial declaration of such filiation. In the absence of such an acknowledgment or of a judicial decree compelling the same, a natural child must bring an action of filiation before or at the time when he institutes proceedings to establish his hereditary rights.

Let us now see whether the plaintiffs come within any of the specified cases which would relieve them of the necessity of bringing an action for acknowledgment.

In order to prove the acknowledgment of their filiation by Ramón Pérez Villamil, the plaintiffs presented the record of

an oral civil suit brought by Telesfora Quiñones against Ramón Pérez Villamil in the Justice of the Peace Court of Río Grande in November of 1873 to recover funds for the maintenance of the three children, Angel, Adelina and Plácida, whom the plaintiff alleged she had by the defendant, and the amount of a prize drawn by a ticket in the provincial lottery. At the trial of the case the claim was extended to include five cows and a mare.

In his answer to the complaint Pérez Villamil stated:

"That he had never denied that the plaintiff had lived in his house, nor had he denied the three children mentioned by her, and that for their support he had been paying her five *pesos* monthly since the termination of their former amorous relations. That as regards the live stock and the lottery prize (he did not remember the number of the ticket), he had given her some two years before a document setting forth the particulars concerning them and he did not consider it prudent to deliver to the plaintiff what she asked for, because he should keep this small capital in his possession to manage and increase it for his children as it was acquired by the plaintiff during the time she lived with him, and, further, because as the plaintiff is a woman of little ability she would spend all of it in a short time and this he could not consent to as it would be like pouring water into a sieve.

"The plaintiff replied that what Villamil had just said was not true, for although he has been paying her five *pesos* monthly in goods from his store, as stated, it was as interest on the amount of the lottery prize which she delivered to him, and nothing else, and that amount does not begin to meet her needs, because as the children grow up her expenses are increased and the plaintiff can scarcely support them with that amount and the two *pesos* monthly which she earns as a hired cook, and that although she has asked the defendant several times to give her a larger amount, he has refused to do so and she has been compelled to bring this action against her will and without any ill feeling toward Villamil in order to secure that which she claims with urgent necessity and perfect right.

"The defendant rejoined that in view of the observations of the judge and in order that this matter should not take the aspect which certain gentlemen of the locality wish to give it, he would agree to pay to the plaintiff, if she were willing, ten *pesos* monthly for the

children and give them a change of clothing and shoes every three months, and he considered this sufficient for them if the plaintiff would give them all the assistance she could also.

"The plaintiff stated that she would accept the offer of the defendant, Ramón Pérez Villamil, if he would be sure to live up to it at all times.

"At this stage of the case the judge declared the trial terminated and stated that as the parties had been able to arrive at an agreement, at which he was pleased, the judgment of the court would be to ratify the agreement made between the plaintiff, Telesfora Quiñones, and the defendant, Ramón Pérez Villamil, in this suit as *res judicata* before a court of competent jurisdiction, with the costs against the defendant."

The record of the trial, composed of the allegations of the parties and the judgment of the court, is signed by the judge, by the parties to the suit (Tomás Benoyt signing for the plaintiff at her request) and by the clerks who acted in the place of the challenged secretary.

We readily admit that the document under consideration is a public one, for judicial proceedings are public documents, and we do not question its genuineness, which has been admitted both by the trial court and by this court. But we cannot agree that said document contains an express, voluntary and solemn acknowledgment of the plaintiffs by Ramón Pérez Villamil. It is clear that it does not contain a judgment ordering said acknowledgment, for the judgment of the Justice of the Peace of Río Grande is limited to approving and ordering the fulfilment of the agreement or contract by virtue of which the defendant binds himself to pay $10 monthly to the plaintiffs and to give them a change of clothing and shoes every three months. It makes no reference whatever to the acknowledgment by Pérez Villamil of the children of Telesfora Quiñones, nor did she in her complaint include any prayer on this point.

We have examined carefully the document under consideration and do not find it proven in an authentic manner that Pérez Villamil expressly, voluntarily and solemnly recognized

Angel, Adelina and Plácida as his natural children. It does appear to be shown in a genuine and authentic manner that Pérez Villamil stated during the trial that he had never denied that the plaintiff had lived in his house or the three children for whose support he had been paying her $5 monthly since the termination of their amorous relations, adding that he did not consider it prudent to deliver to Telesfora the amount of the lottery prize and the heads of cattle claimed by her, as he wished this small capital to be preserved for his children and not squandered by a woman of little ability, as the plaintiff was. The foregoing statements made before a judicial authority and set out in a public document constitute an element of written evidence of the acknowledgment of the plaintiffs and at most the possession by Angel, Adelina and Plácida of the civil status of natural children of Ramón Pérez Villamil, but this element of proof and possession of status are not sufficient to exempt them from the necessity of bringing an action for acknowledgment, according to the doctrine laid down by us in *Gual et al.* v. *Bonafoux et al.,* 15 P. R. R., 545.

The acknowledgment of the plaintiffs by Pérez Villamil which is sought to be deduced from the statements made by him at the trial of the oral civil action would be at most a tacit acknowledgment of the natural filiation of the plaintiffs, but not the express, voluntary and solemn acknowledgment which the jurisprudence established by this court exacts in order that it may be unnecessary to bring an action for acknowledgment.

It cannot be asserted, either grammatically or legally, that Pérez Villamil acknowledged the plaintiffs in an authentic and genuine public document unless such acknowledgment was expressly, voluntarily and solemnly made.

Moreover, the acknowledgment was only incidental, for Telesfora Quiñones did not sue Pérez Villamil for the acknowledgment of the children which she had by him, but for their support, and that merely incidental acknowledgment

does not merit being qualified as solemn. Nor was it voluntary in the sense that Pérez Villamil desired to acknowledge his children at the trial, because, if such had been his intention, he would have made the acknowledgment in a proper document which would serve at any time as proof of the filiation of his children.

Furthermore, the fact that Pérez Villamil agreed to support the three children of Telesfora Quiñones, with whom he had sustained illicit relations, said agreement being approved by the Justice of the Peace of Río Grande, does not involve the acknowledgment of their natural filiation even admitting that the natural paternity of Ramón Pérez Villamil served as the basis of said agreement, because in said suit nothing was established or could be established regarding acknowledgment. Judgment of the Supreme Court of Spain of April 11, 1861. Besides, it is a truism that no one is bound for more than he wished to bind himself for, or for which he is bound judicially.

The civil status of the plaintiffs in relation to Ramón Pérez Villamil was not denied in the oral civil action tried before the Justice of the Peace of Río Grande, because in that case no decision was rendered on this point and Pérez Villamil only agreed to contribute to their support in view of the observations of the judge and in order that the matter should not take the aspect which certain gentlemen of the locality wished to give it. These words of his reveal a lack of spontaneity and intention to make such an important acknowledgment as that of paternity.

There being, then, no authentic and convincing evidence of an express, voluntary and solemn acknowledgment of the plaintiffs by Pérez Villamil, an action for acknowledgment should have been brought before or concurrently with the action for the annulment of the designation of heirs. In an action of this kind the pleas of prescription and *res judicata* entered by the appellants may be considered.

For the foregoing reason we dissent from the opinion

held by the majority of this court and think that the judgment appealed from should be reversed and the complaint dismissed without special imposition of costs.